ZENO B. BAUCUS
KRIS A. MCLEAN
Assistant U.S. Attorneys
U.S. Attorney's Office
901 Front Street, Suite 1100
Helena, MT 59626
Phone: (406) 457-5120
FAX: (406) 457-5130
Email: zeno.baucus@usdoj.gov
kris.mclean@usdoj.gov

ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| UNITED STATES OF AMERICA, | CR 13-37-M-DWM |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES RESPONSE TO DEFENDANT'S MOTION *IN LIMINE*** |
| JORDAN LINN GRAHAM, | |
| Defendant. | |

1. The Opinions of Laypersons is Admissible

The defendant seeks to exclude the "post-hoc opinions of laypersons

1

concerning Ms. Graham's demeanor." This motion is overbroad, premature, and not grounded in legal support. As such, it should be denied.

The defendant's first argument in support of this motion is that any such testimony is irrelevant under Fed. R. Evid. 401. Doc. No. 67 at 2. Nothing could be further from the truth. In the context of a murder prosecution, circumstantial evidence – as is demonstrated here, is often relied upon. *See e.g.*, *United States v. Begay*, 673 F.3d 1038 (9th Cir. 2011) ("Premeditation can be proved by circumstantial evidence."); *United States v. Free*, 841 F.2d 321, 325 (9th Cir. 1988) ("The elements of first-degree murder can be established by circumstantial evidence and inferences drawn from it.") (citing *United States v. Lesina*, 833 F.2d 156 (9th Cir. 1987) and *United States v. Steel*, 759 F.2d 706, 713 (9th Cir. 1985)); *United States v. Lawrence*, 349 F.3d 109, 120 (3d Cir. 2003) ("Moreover, since it is impossible to photograph the mental processes of a killer, and since it is folly to expect that a killing will be explained by a killer's explanation of any specific intent accompanying the act, circumstantial evidence is usually the only possible proof of the mental processes involved."). In the context of the defendant, this was

2

manifested in, among other ways, here actions after she pushed Mr. Johnson to his death. *See e.g.*, *United States v. Monroe*, 1988 WL 132593, *1-3 (9th Cir. Dec. 2, 1988) (affirming first degree murder conviction, in part, due to defendant's conduct after the murder); *United States v. Gordon*, 987 F.2d 902, 907 (2d Cir. 1993) (finding that "circumstantial evidence may include acts that exhibit a consciousness of guilt, such as false exculpatory statements.").

Further, the defendant has failed to argue how any of these witnesses would introduce opinions based on scientific, technical, or other specialized knowledge, as Fed. R. Evid. 701 contemplates. Witnesses offering direct testimony about the defendant in the days following July 7, 2013, is anything but scientific or technical. *See, e.g.*, *Colon Osorio*, 360 F.3d 48, 52-53 (1st Cir. 2004) (officer who personally visited firearm manufacturing plant could give lay opinion, not subject to disclosure, that gun traveled in interstate commerce); *United States v. Rigas*, 490 F.3d 208, 224-25 (2d Cir. 2007) (disclosure not required for employee's personal observations of organization's accounting practices); *United States v. Yannotti*, 541 F.3d 112, 125-26 (2d Cir. 2008) (witness's opinions about loansharking, based upon his insider perceptions as a

3

member of the charged conspiracy, were not subject to expert disclosure rule).

Finally, the layperson opinions of the defendant's conduct after the murder does not come close to violating Fed. R. Evid. 403, especially when the defendant's motion fails to identify any specific witnesses or potential testimony. *United States v. Cross,* 308 F.3d 308, 323, 325 (3d Cir. 2002) ("Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone."). Indeed, the fact that Rule 403 is an exception to the mandatory admission of relevant evidence means that exclusion of evidence under Rule 403 should be "used sparingly." *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992); Joseph M. McLaughlin, Jack B. Weinstein, Margaret A. Berger, *Weinstein's Federal Evidence*, § 403.02[2][a] at 403-11 (2d Ed. 1997) (*Weinstein*). Here, the admission of such testimony is highly relevant and should be admitted.

4

## 2. The United States agrees in part to defendant's motion to exclude nude images.

The United States agrees in part to the defendant's motion to exclude nude photographs of the defendant and of the victim in its case-in-chief. But, the United States reserves its right to introduce the images, if needed, in its rebuttal case. At this time, the United States is not aware of the defense's theory of the case. Depending upon defense's theory, it could make the photographs relevant to rebut claims put forward by defense. Specifically, by way of example but not by limitation, were defense to introduce evidence or testimony relating to the defendant's character, it could open the door for the government to rebut certain claims made by the defense.

The government therefore recommends that the Court grant the defendant's motion to exclude the photographs from the government's case-in-chief. The government further submits that the Court is not in a position to rule at this point on whether the photographs could be used by the government in its rebuttal case because the defense has not put on its case. As such, the Court should address the issue at trial should the issue arise for the government to need the photographs in its rebuttal

case.

## 3. Autopsy photographs are highly probative and should not be excluded.

Defendant seeks to exclude certain autopsy photographs because they are graphic. But, gruesome and graphic autopsy photographs are routinely admitted into evidence without causing any unfair prejudice. *Batchelor v. Cupp*, 693 F.2d 859, 865 (9th Cir. 1982); *United States v. Boise*, 916 F.2d 497, 504 (9th Cir. 1990); *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1466 (9th Cir. 1986) (videotape of autopsy). Likewise, the graphic nature of the photograph(s) itself should not preclude their admission into evidence in this case.

Defendant argues that the cause of death—a fall from a cliff—is not in dispute. But defendant fails to highlight that the cause of the fall goes to the very heart of this case. The autopsy photographs here show that the victim's injuries sustained in the fall are consistent with being pushed in the back by the defendant causing him to fall face first over the cliff to his death. These photographs show that the victim suffered trauma to his face and skull upon impact. Indeed, the photographs are highly probative and confirm that the defendant had the intent to kill

6

the victim when she pushed him face first over the cliff. These photographs should not be excluded because their probative value far outweighs any unfair prejudice.

4. **Expert testimony should comply with Fed. R. Evid. 704(b).**

The defendant's motion *in limine* to exclude expert testimony relating to the defendant's mental state is vague and unclear. It appears that the defendant essentially moves the Court to require any testimony from Dr. Gary Dale, the State of Montana Medical Examiner, to comply with Fed. R. Evid. 704(b). To that end, the United States agrees that Dr. Dale's testimony should comply with Rule 704(b). Beyond this, it is not clear from defendant's Motion exactly what testimony she is asking the Court to exclude. Indeed, Dr. Dale's expert report specifically states that he is not opining as to intent.

Defendant acknowledges that Dr. Dale should be allowed to testify that the victim died as a result of blunt force injuries as acknowledged in his expert report. The United States agrees with defendant's analysis because such testimony about the injuries sustained by the victim is permissible under Rule 704(b).

Thus, the United States agrees that Dr. Dale's testimony should

7

comply with Rule 704(b), but to the extent defendant is attempting to exclude some sort of evidence broader than that covered by Rule 704(b), the government objects.

5. **Alleged inconsistencies in cell phone records in discovery do not preclude their admission into evidence.**

Defendant seeks to preclude admission of certain cell phone records because there is no foundation. This request should be denied for multiple reasons. As an initial matter, this foundational issue is not ripe for a determination in this motion *in limine*. The United States has had no ability call the appropriate witness(es) who can lay the proper foundation and authenticate the records.

"The requirement of authentication prior to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *United States v. Salcido*, 506 F.3d 729, 732-33 (9th Cir. 2007); Fed. R. Evid. 901(a). Federal Rule of Evidence 901(b) offers a non-exhaustive list of authentication methods. Several are useful in cases involving cell phone information. For example, Rule 901(b)(1) provides that evidence may be authenticated by a person with knowledge "that a matter is what it is claimed to be."

8

The United States submits that it will be able to lay the proper evidentiary foundation for the records in question with appropriate witnesses. Once the records have properly been authenticated they should be admitted into evidence. Any discrepancies between the text messages on the actual phone and the text message from Verizon goes to the weight of the evidence not to the admissibility. *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (where defendant in a child pornography case deleted portions of his Internet chat logs from a third person's hard drive, deletions went to the weight of the evidence, not to its admissibility). Once the records are admitted into evidence, defense counsel is free to cross-exam about any of the alleged inconsistencies of the text messages.

Additionally, the defendant's motion *in limine* is a vague and overbroad request for exclusion which should be denied. *See, e.g.*, *United States v. Rosenthal*, 793 F.2d 1214, 1237 (11th Cir. 1986) (affirming denial of motion *in limine* that was too broad); *United States v. Hickerson*, 732 F.2d 611, 613 (7th Cir. 1984) (same). Here, defendant points to no specific inconsistency or any specific text message. Indeed, defendant has not provided the Court with any of the challenged portions

of the text messages.  This makes it impossible for the Court to determine whether any of the challenged evidence is admissible. *Transamerica Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 597 F.Supp.2d 897, 917-18 (N.D. Iowa 2009).

Furthermore, defendant generally points to inconsistencies with relation to the time the text messages were sent, but fails to take into account the different time formatting used such as GMT, UTC, and perhaps military time.  Likewise, defendant fails to take into account that a reason some of the text messages held by Verizon were not on the phone could be because defendant herself deleted data from the phone before agents were able to search her phone.  These types of inconsistencies do not mean that text messages held by Verizon are not authentic and not admissible.  Or, that the text messages taken from the defendant's phone are not authentic.  As stated before, the government will be able to provide witnesses to authenticate that the records are what they claim to be.  Indeed, defense acknowledges that the text messages are in fact text messages and that the messages did in fact come from Verizon and that other text messages did in fact come from the defendant's phone.

Lastly, defendant has stated no reason why she cannot make ordinary trial objection(s) to the foundation of the records and why ordinary trial objection(s) could not protect the record should the foundation actually be lacking at trial. For all the reasons stated above, defendant's Motion should be denied.

DATED this 14th day of November, 2013.

>MICHAEL W. COTTER
>United States Attorney
>
>*/s/Zeno B. Baucus*
>Assistant U.S. Attorney
>Attorney for United States

## CERTIFICATE OF COMPLIANCE

Pursuant to D. Mont. LR 7.1(d)(2) and CR 12.1(e), the Response to Defendant's Motion in Limine is proportionately spaced, has a typeface of 14 points or more, and the body contains 1,852 words.

>*/s/Zeno B. Baucus*
>Assistant U.S. Attorney
>Attorney for United States