FILED

DEC 0 5 2013

Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JORDAN LINN GRAHAM,<br><br>Defendant. | CR 13–37–M–DWM<br><br>ORDER |

The Court held a Rule 104 hearing and a final pretrial conference in this matter on December 5, 2013. The government and the Defendant both provided argument on a number of evidentiary issues. In addition to those reasons stated in open court, the following forms the basis of the Court's reasoning as it relates to these issues.

I. **Rule 404(b) Materials**

The government is precluded from introducing evidence regarding Graham's alleged allegations of abuse in prior relationships or Graham's alleged statements made one month prior to her wedding in which supposedly she said she could kill her mother and step-father. The government has failed to show that these other acts are admissible under Rule 404(b) of the Federal Rules of

1

Evidence.

> Pursuant to Rule 404(b),
>
> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character ... [It] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

The Ninth Circuit holds that such proof is admissible if the evidence (1) proves a material element of the crime charged, (2) shows similarity between past and charged conduct, (3) is based on sufficient evidence, and (4) is not too remote in time. *United States v. Hinton*, 31 F.3d 817, 822 (9th Cir. 1994) (citation omitted). "So long as the evidence is offered for a proper purpose, such as to prove intent, the district court is accorded wide discretion in deciding whether to admit the evidence, and the test for admissibility is one of relevance." *United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir. 1997) (citations omitted). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence[ and] the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." *Huddleston v. United States*, 485 U.S. 681,

2

689 (1988). The government may not "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." *Id.* Even if a similar act is found to be relevant, however, the probative value of the act must not be substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403; *see Johnson*, 132 F.3d at 1282. In this case the gist of the government's argument is a veiled propensity case disguised as going to Graham's "intent" and "veracity." Neither position is sound under existing case law or the Rules of Evidence.

"The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston*, 485 U.S. at 686. Here, the government contends Graham's prior allegations of abuse and her statements regarding her willingness to kill her mother and step-father are probative of her intent in the present matter. Intent is plainly an element of murder under 18 U.S.C. § 1111(a). However, testimony regarding either Graham's supposedly false allegations of prior abusive relationships or her supposed statement regarding her mother and step-father does not speak to her intent to murder Johnson. The argument boils down to propensity proof and that is not admissible. The government has failed to demonstrate a similarity between the alleged past and present conduct. While the

3

past conduct need not be identical to the conduct charged, it must be similar enough to be probative of intent. *See Johnson*, 132 F.3d at 1283; *United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir. 1989) (noting "that the use of prior acts to prove identity of intent is only permissible if the acts are similar to the crime charged."). Unlike the situation in *Johnson*, even if the purported 404(b) evidence were true, there is little to no similarity between the prior acts offered by the government and any of the charged conduct. The government relies on *Huddleston* to argue that extrinsic acts may be critical to the establishment of mental state. *See* 485 U.S. at 685. But this proposition attempts to draw inferences from unrelated, irrelevant conduct. The offer of proof about the 404(b) evidence does not help establish mental state, but speaks instead to Graham's character, and propensity evidence if the proof was admitted, proof which is explicitly excluded under Rule 404(b) and Rule 608 of the Federal Rules of Evidence. Furthermore, given the tenuous nature of what is offered as 404(b) evidence, it would confuse issues, waste time, and be highly prejudicial but with little meaning. In short, it would also violate Rule 403.

## II. Rule 1006 Summary

The government's proposed summary (Proposed Exhibit 11) is not a proper summary under Rule 1006 of the Federal Rules of Evidence and thus may not be

presented to the jury as a Rule 1006 summary. It is instead a pedagogical device which if cleaned up may be considered if it would help the jury to understand the proof.

"When considering the admissibility of exhibits of this nature, it is critical to distinguish between charts or summaries *as evidence* and charts or summaries *as pedagogical devices*." *United States v. Wood*, 943 F.3d 1048, 1053 (9th Cir. 1991) (citation omitted) (emphasis in original). Charts and summaries "as evidence" are governed by Rule 1006, which permits their introduction if composed "of voluminous writings, recordings, or photographs which cannot conveniently be examined in court[.]" In contrast, charts or summaries of testimony or documents already entered into evidence are merely pedagogical devices, and not evidence themselves. *Id.*

"The purpose of Rule 1006 is to allow the use of summaries when the volume of documents being summarized is so large as to make their use impractical or impossible[.]" *United States v. Johnson*, 594 F.2d 1253, 1255 (9th Cir. 1979). "[I]t must be shown that the summation accurately summarizes the materials involved by not referring to information not contained in the original." *Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292, 301 (3d Cir. 1961) (citing *Standard Oil Co. of Cal. v. Moore*, 251 F.2d 188, 222-23 (9th Cir. 1957)

5

(finding that although the summary contained information drawn from the underlying ledger, it also contained computations which were not reflections of the ledger entries)); *see also Holland v. United States*, 348 U.S. 121, 128 (1954) (admonition to guard against situations in which figures, computations, and charts acquire " an existence of their own, independent of the evidence which gave rise to them.")

Here, the summary includes extraneous information and factual assertions. Although such editorializing may help provide context for the underlying data, it does not arise from that data. Based on the foregoing, the admission of Exhibit 11 as a summary under Rule 1006 is not proper.[1] *See United States v. Bray*, 139 F.3d 1104, 1110 (noting that the information on the summary may not be embellished by or annotated with the conclusions or inferences drawn by the proponent, "whether in the form of labels, captions, highlighting techniques, or otherwise.").

The Exhibit, if modified to eliminate extraneous data, may be more appropriately categorized as a pedagogical device. A "pedagogical device" is an illustrative aide that:

(1) is used to summarize or illustrate evidence, such as documents,

---

[1] The voluminous nature of the underlying data is also unclear. It allegedly summarizes 19 text messages, 17 data connections, and 8 phone calls. This amount of information is not sufficiently voluminous to justify a summary.

6

recordings, or trial testimony, that has been admitted in evidence; (2) is itself not admitted into evidence; and (3) may reflect to some extent, through captions or other organizational devices or descriptions, the inferences and conclusions drawn from the underlying evidence by the summary's proponent. This type of evidence is more akin to argument than evidence since [it] organize[s] the jury's examination of testimony and documents already admitted in evidence.

*Id.* at 1111. "Trial courts have discretionary authority to permit counsel to employ such pedagogical device 'summaries' to clarify and simplify complex testimony or other information and evidence or to assist counsel in the presentation of argument to the . . . jury." *Id.*

As a pedagogical device Proposed Exhibit 11 contains extraneous material that the government would not be allowed to present as currently proposed (such as the icon of a person at "The Loop," the designation of "The Loop" as a "crime scene," the "unclassified/FOUO" labels on each page, and the cover page with the FBI seal). If a similar pedagogical device is offered, the jury will be instructed that these materials are not evidence but only illustrative aids, *see id,* and that the pedagogical device will not be available in the jury room.

### III. Autopsy Photographs

As the cause of death in this prosecution is not disputed, the probative value of some of the autopsy photographs is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Exhibits 3 and 4 are excluded on these

7

grounds and for the reasons stated on the record in open court. Exhibits 2, 5, and 6 do not suffer from the same level of prejudice, however, and may be admissible at trial if Dr. Dale provides foundational testimony that these photographs would assist his testimony. A ruling on the admissibility of Exhibits 2, 5, and 6 is reserved for trial.

**IV.     The Black Cloth: Photographs and FBI Laboratory Reports**

The Court reserves determination on questions of this evidence's admissibility for trial. Despite two hearings and the full opportunity to explain how the evidence is relevant and probative of any issue in the case the government has yet to come up with anything but conjecture and speculation. There is no evident connection to any issue in the case of either the cloth or the laboratory testing that was done. It has not been logically suggested how the DNA and hair analysis regarding the black cloth has anything to do with an issue in this case. It appears that the proof has a significant probability of confusing the jury, misleading them, and being irrelevant. If admitted, such evidence may be limited under Fed. R. Evid. 105 and if a logical connection or inference has not been made with issues in the case, then the jury will be given either a limiting instruction or told to disregard the evidence as irrelevant to any issue for its determination in the case.

In the meantime, the government may not imply, suggest or otherwise make reference to DNA evidence, hair examination or laboratory reports in its opening statement. A ruling on the admissibility of Exhibits 7, 8, 9, 10, and 12 is reserved for trial.

IT IS SO ORDERED.

Dated this 5th day of December, 2013.

Donald W. Molloy, District Judge
United States District Court